UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| CHARLIE MACON, # 269718, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-138 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| LARRY BRYAN, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. At all times relevant to his claims, plaintiff was an inmate at the Lakeland Correctional Facility (LCF). The defendants are Corrections Officer Larry Bryan, Lieutenant Bryan Morrison, and Captain Thomas Watson. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. He sues all defendants in their individual capacities and seeks damages.

The matter is now before the court on a motion for summary judgment by defendants Bryan, Morrison, and Watson (docket # 32) and a separate motion for summary judgment by defendant Watson based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 11). Plaintiff has filed his response. (docket #s 23, 35). For the reasons set forth herein, I recommend that defendants' motions for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th

Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible

of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendant Watson has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; Booth, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed"

complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process.

---

[1] A copy of the policy directive is found in the record. *See* docket # 12-2, ID# s 59-65.

Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using

the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. His claims

arise in the aftermath of a dental problem addressed in plaintiff's prison in 2011. In July 2011, a dentist filled his "bottom right tooth."[2] (Compl. ¶ 21). Plaintiff characterizes the dentist's work as a "botched" tooth filling. (*Id.* ¶¶ 5, 20, 21, 56). On July 21, 2011, plaintiff was examined by an oral surgeon at Duane Waters Hospital in response to his complaints of pain in his jaw. (docket # 35-2, ID# 212). His claims in this case concern events occurring after his return to the prison from the hospital.

Corrections Officer Bryan

Defendants are employed by the State of Michigan at the Lakeland Correctional Facility (LCF). Prisoner movement at LCF is regulated. A prisoner must have an itinerary or pass to move within the institution. On July 24, 2011, Officer Bryan refused to allow plaintiff to go to a medication line because plaintiff did not have the necessary documents. Instead, plaintiff produced a "medical detail" from the oral surgeon. (Compl. ¶ 17; docket # 33-1, Bryan Aff. ¶ 3, ID# 166-67; docket # 35-2, ID# 211). Plaintiff's medical records show that he received his medication on the same day. Specifically, plaintiff received Motrin, Prednisone, Baclofen, and Elavil. (docket # 33-4, Smith Aff. ¶ 7, ID#s 179, 184).

---

[2] Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motions for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

On July 30, 2011, Officer Bryan sent plaintiff back to his housing unit, because he was attempting to go to health services before the 10-minute travel time allowed under the prisoner movement guidelines. (docket # 33-1, Bryan Aff. ¶ 4, ID# 167). Prison medical records reveal that on the same day, July 30, 2011, plaintiff received Motrin, Baclofen, and Elavil. (docket # 33-4, Smith Aff. ¶ 7, ID#s 179, 184).

On August 2, 2011, LCF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number LCF-2011-08-0790-17i. (Compl. ¶ 22; docket # 12-3, ID# 92). The grievance states as follows:

> Ofc. Bryan doesn't have authority to say when I could go to the medline. Also my unit C. M. call-out is third to, get called for C. M. lunch. Lunch was called at 11:55 AM 7/30/11. Last call for med-line was at 12:15 PM on 7/30/11, and I was denied my medical, by Ofc. Bryan.

(docket # 12-3, ID# 92).

### Lieutenant Morrison

On August 3, 2011, Lieutenant Morrison reviewed the above-referenced grievance with plaintiff. (Compl. ¶ 23; Morrison Aff. ¶ 3, docket # 33-2, ID# 170; docket # 35-2, ID# 209). Health Care had informed Morrison that plaintiff did not take his medication at noon. (Compl. ¶ 23; docket # 35 at ID # 205). When confronted with this information, plaintiff indicated that he had recently been to Duane Waters Hospital and obtained medical detail orders from a specialist. (Compl. ¶ 24; docket # 35 at ID# 205). At some point, there was a discussion about taking pills with food. Plaintiff related that "some pill containers" indicate that medication should be taken with food. (Compl. ¶¶ 25, 26; docket # 35 at ID# 205). Shortly thereafter, a unit officer advised plaintiff that Morrison's instruction was that plaintiff was not to go to the med-line, because he already had the

medication in his living area. (Compl. ¶ 27; docket # 35, ID# 205). Medical records show that plaintiff continued to receive his medications. (Smith Aff. ¶ 7, docket # 33-4, ID#s 179-80, 188).

On August 6, 2011, defendant Morrison completed his investigation and made the Step I grievance response. He found that plaintiff had sufficient time to go to the medication line and come back and eat. Further, Health Care advised Morrison that plaintiff "had the medication in his room." Morrison concluded: "Based upon the facts obtained, this grievance is without merit and is respectfully denied at this step of the resolution process." (docket # 12-3, ID#s 86, 92; Morrison Aff. ¶¶ 4-5, docket # 33-2, ID# 171). On August 24, 2011, the warden denied plaintiff's Step II appeal because the "Step I response [was] supported." (docket # 12-3, ID# 91). On January 6, 2012, the MDOC's Grievance and Appeals Section denied plaintiff's Step III appeal. (docket # 12-3, ID# 90).

Captain Watson

Defendant Watson is mentioned in only three paragraphs of plaintiff's complaint. (Compl. ¶¶ 9, 29, 50). Paragraph 9 alleges that Watson was a corrections officer at LCF. Paragraph 29 alleges that Watson was involved in the Step I response to Grievance Number LCF-2011-08-0790-17i. (Compl. ¶ 29). Watson's name appears on the Step I response as "reviewer." (docket # 12-3, ID# 92). Paragraph Z of Policy Directive 03.02.130 states: "Each Step I grievance response shall be reviewed by the respondent's supervisor prior to the grievance being returned to the Step I Grievance Coordinator to ensure that it appropriately addresses the issue raised in the grievance and accurately reflect[s] Department policy and procedure." (docket # 12-2, ID# 63). Paragraph 50 alleges no specific facts, but does state the conclusion that "Capt. Watson kept Mr. Macon from

Health Care call-out (Pill-Line)." (Compl. ¶ 50). Plaintiff did not file and pursue any grievance against Watson through Step III of the MDOC's grievance process. (Russell Aff. ¶ 18, docket # 12-3, ID# 69).

## Discussion

**1.** **Eighth Amendment**

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. The second prong under *Wilson* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v.*

*Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

On two dates in 2011, Officer Bryan refused plaintiff's request to travel to other areas of the prison. On the first occasion, plaintiff did not have the necessary itinerary, and on the second, plaintiff was attempting to travel before the authorized time. Defendant Morrison investigated plaintiff's grievance and denied it for lack of merit. Plaintiff had medication in his room and he had time to go to the medication line and come back and eat. Thus, plaintiff was never denied access to his medications or to needed health services. He was merely required to follow prison procedure in doing so. Furthermore, plaintiff's briefs clarify that his claim against Watson is based on Watson's grievance processing and his status as a supervisor. (Plf. Brief at ID#s 131-32, docket # 23; Plf. Brief at ID# 205, docket # 35). As this court has previously held in this case, a supervisor has no liability under section 1983 on a *respondeat superior* theory or from the mere review and denial of

a grievance after the fact. (Op., docket # 3, ID# 28-29). On the present record, no reasonable trier of fact could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against defendants Bryan, Morrison, or Watson. I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's Eight Amendment claims.

    **2.**    **Exhaustion**

Defendant Watson is entitled to summary judgment on the alternative ground that plaintiff did not properly exhaust his administrative remedies against him as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

Plaintiff argues that he exhausted his administrative remedies against Watson because Watson was involved in reviewing the Step I response to his grievance against Officer Bryan. (Plf. Brief at ID#s 131-32, docket # 23; Plf. Brief at ID# 205, docket # 35). Watson's status as a "reviewer" of a response to a grievance against another MDOC employee did nothing to exhaust any claim against Watson. Plaintiff did not properly exhaust any grievance against defendant Watson. I find that defendant Watson has carried his burden on the affirmative defense and is entitled to the alternative relief of dismissal of all of plaintiff's claims.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motions for summary judgment (docket #s 11, 32) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

Dated:  March 4, 2013          /s/  Joseph G. Scoville
                                United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).